**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CAROLYN OFFUTT MORWAY, | ) CASE NO. 1:22-CV-00523-CEH |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant, | ) MEMORANDUM ORDER AND |
| | ) OPINION |

**I. Introduction**

Plaintiff, Carolyn Offutt Morway ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's final decision denying Claimant benefits.

**II. Procedural History**

Claimant filed applications for POD and DIB on August 9, 2019 alleging a disability onset date of January 1, 2019. (ECF No. 8, PageID #: 56). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 56). On December 9, 2020, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 56). The ALJ issued a written decision finding Claimant was not disabled on December 21,

1

2020. (ECF No. 8, PageID #: 53). The ALJ's decision became final on February 11, 2022 when the Appeals Council declined further review. (ECF No. 8, PageID #: 47).

Claimant filed a Complaint to challenge the Commissioner's final decision on April 1, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 13, 15). Claimant asserts the following assignment of error:

> (1) The RFC is not supported by substantial evidence as the ALJ failed to properly consider Plaintiff's symptoms.

(ECF No. 10, PageID #: 522).

**III. Background**

    **A. Relevant Hearing Testimony and Subjective Complaints**

The ALJ summarized the some of the relevant testimony from Claimant's hearing:

> The claimant reported disability related to arthritis, degenerative disc disease, Crohn's/IBS, and ulcer hiatal hernia (3E/2). The claimant reported her past jobs ended due to changes in management; she is disabled due to the amount of time she spends in the restroom; she sleeps only 3-4 hours per night (Testimony). The claimant reported varying frequency of bowel movements, ranging from 2-4 daily to up to 8-12 per day (See 2F/3-4; 9F/5). She noted her bathroom visits vary up to hours at a time.

(ECF No. 8, PageID #: 63). Claimant also testified that she is forced to use the restroom eight to ten times a day on a "bad" day and two to four times a day on a "good" day. (ECF No. 8, PageID #: 85–86). Every time she uses a restroom, she stated she spends about half an hour there. (ECF No. 8, PageID #: 87). She stated she experienced two or three "bad" days a week. (ECF No. 8, PageID #: 85). Claimant testified that she stays home most of the time so she can reach a restroom quickly if she needs one. (ECF No. 8, PageID #: 86). In May 2019, Claimant indicated to her provider at North Shore Gastroenterology that she suffered from diarrhea seven to eight times a day and experienced generalized cramping, urgency, bloating, and gas. (ECF No. 8, PageID

#: 326). She also reported losing twelve pounds since her symptoms began. (ECF No. 8, PageID #: 326).

The ALJ also consulted a vocational expert who testified at the administrative hearing. (*See* ECF No. 8, PageID #: 94–97). The ALJ asked her two hypothetical questions and whether employers were required under law to provide access to restrooms. (ECF No. 8, PageID #: 94–96). The vocational expert testified that employers are required to provide employees with restroom access. (ECF No. 8, PageID #: 96).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms (sic):

> The record supports that the claimant has experienced functional limitations related to degenerative disc disease of the lumbar spine, including kyphoscoliosis, osteoarthritis of the hips, and IBD.
>
> The claimant denied arthritis, back pain, and joint swelling throughout the record (See e.g., 3F/17, 29; 6F/11). The exam findings includes minimal, remarkable findings, including edema 1+ in the bilateral tibial (8F/45; 9F/6). At exam on November 21, 2019, her muscle tone and bulk in the upper and lower extremities were normal for her age; there was no evidence of tremor; she had full strength in the bilateral upper and lower extremities; her sensation was intact throughout; her deep tendon reflexes were unremarkable; her gait was scoliotic with the right shoulder riding above the left and with a hip tilt along a moderate grade; and, with the exception of some reduced range of motion in the dorsolumbar spine, she retained full range of motion throughout (4F/3-4). On February 25, 2020, while she had diminished sensation to pinprick on the dorsum of both feet, her sensation was intact for vibration and proprioception in both feet; her reflexes were intact; her gait was normal; she had no edema; and she was otherwise unremarkable throughout (9F/16). Other exam findings include a normal gait and no neurological focal deficits (3F/45; 6F/11-12). Imaging of the claimant's hips dated November 21, 2019, showed mild degenerative changes in the joint spaces and humeral head, and otherwise unremarkable (5F/2).
>
> At a video appointment with her doctor on October 23, 2020, the claimant reported numbness and tingling in her feet, worse at night;

> she did not report diarrhea (8F/27). The doctor noted the diagnosis of peripheral polyneuropathy; however, there are no related examination findings, imaging, or testing to support the diagnosis. In fact, the claimant's exam findings throughout the relevant period show full strength, reflexes, and sensation throughout the upper and lower extremities (4F/3-4; 6F/28-29; 7F/2-3).
>
> An EGD on May 23, 2019, showed diaphragmatic hernia, other disease of stomach and duodenum (3F/33-35). A colonoscopy of the same date showed multiple erosions in the terminal ileum, sigmoid colon, descending colon; tortuous colon; and otherwise unremarkable (3F/36-38). Biopsy should no diffuse inflammatory and architectural changes consistent with ulcerative colitis; however, the patchy inflammatory changes in the terminal ileum and colon were consistent with differential diagnoses of infection, medication-induced mucosal injury, and Crohn's disease (3F/40). Further testing showed a pattern "not consistent with IBD", which includes Crohn's disease or ulcerative colitis (3F/42). Imaging of the claimant's abdomen on June 18, 2019, showed no signs of small or large bowel inflammation; however, it showed a large hiatal hernia and cholelithiasis (6F/28-29; 7F/2-3). Despite these results, the claimant's doctor related her diarrhea to mild ileitis and colitis, and concluded that she still may have IBS-D despite diagnostic panels concluding otherwise (3F/46). Related exam findings in the record include positive bowel sounds in al quadrants; a soft, non-tender, and nondistended abdomen, without guarding, rigidity or rebound tenderness; no abdominal palpable masses; a normal gait; and no neurological focal deficits (3F/45; 6F/11-12).

(ECF No. 8, PageID #: 64–65).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the spine (mild) of the lumbar spine, osteoarthritis of the hips (mild degenerative changes), irritable bowel disease ("IBD") (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

4

> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop; frequently balance, kneel, crouch, and crawl; avoid all exposure to hazards such as work in unprotected heights and operating dangerous moving machinery such as power saws and jack hammers; and will be off-task 10% of the work day due to any symptom.
>
> 6. The claimant is capable of performing past relevant work as a human resources director and academic instructor as generally, and as actually performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2019, through the date of this decision (20 CFR 404.1520(f)).

(ECF No. 8, PageID #: 58, 59, 60, 62, 67, 68).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r*

*of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises one issue on appeal. She argues that the RFC is not supported by substantial evidence since the ALJ failed to consider Plaintiff's subjective complaints. (ECF No. 10, PageID

6

#: 522). Specifically, Claimant argues the ALJ failed to consider her "need for urgent, frequent, unpredictable, and lengthy use of the bathroom resulting in the need for off-task time." (ECF No. 10, PageID #: 528). In her May 2019 and January 2020 appointments, Claimant denied experiencing abdominal pain, rectal bleeding, constipation, nausea, and vomiting, and she now argues the ALJ "appear[ed] to use the denial of these symptoms as evidence inconsistent with [her] allegations." (ECF No. 10, PageID #: 529). She claims this means the ALJ cherry-picked evidence from the record and improperly focused on benign findings, rather than the entire record. (ECF No. 10, PageID #: 529). Finally, she contends that the ALJ erred in failing to consider her daily activities in evaluating her allegations. (ECF No. 10, PageID #: 531). The ALJ's errors are not harmless, Claimant argues, as the vocational expert testified that Clamant could not complete past relevant work if she was off-task over thirteen percent of the workday. (ECF No. 10, PageID #: 532). Considering the full extent of her conditions, Claimant contends it is clear she would be off-task for more than thirteen percent of the time and be precluded from her past work. (*See* ECF No. 10, PageID #: 532).[1]

The Commissioner argues that substantial evidence supports the ALJ's finding discrediting Claimant's subjective symptoms. (ECF No. 13, PageID #: 542). The Commissioner contends the ALJ properly considered several SSR 16-3p and § 404.1529 factors, such as the subjective record, including Claimant's testimony about her medications, variations in her allegations, and her weight. (ECF No. 13, PageID #: 543, 544, 545). The ALJ also considered the objective record, the Commissioner argues, and reasonably rejected Claimant's allegations she was unable to work. (*See* ECF No. 13, PageID #: 543, 546). Finally, the Commissioner argues Claimant has not

---

[1] As will be discussed below, the Court finds that the ALJ properly evaluated Claimant's subjective complaints. Thus, it will not consider any harmless error argumentation, as the ALJ did not commit error.

7

demonstrated what reversible error the ALJ caused her and is only asking the Court to reweigh the evidence. (ECF No. 13, PageID #: 547).

In her reply brief, Claimant initially argues the Commissioner is attempting to change this Court's standard of review.[2] (ECF No. 15, PageID #: 552 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019))). She next argues that the Commissioner relies on the same cherry-picked reports the ALJ did and again asserts that the ALJ cannot solely rely on records that support her finding. (ECF No. 15, PageID #: 553 (citing *Rogers*, 486 F.3d at 248)). The Commissioner and the ALJ ignore critical context points that change the meaning of certain records and both mischaracterize the evidence relating to the frequency and consistency of Claimant's bowel movements, Claimant argues. (ECF No. 15, PageID #: 553–54 (arguing this case mirrors *Gardner v. Astrue*, No. CIV.A. 2:09-00011, 2009 WL 2356551, at *5 (M.D. Tenn. July 7, 2009), *report and recommendation adopted*, No. 2:09-0011, 2009 WL 2341137 (M.D. Tenn. July 29, 2009))). Claimant finally insists she is not asking the Court to reweigh evidence but instead give "proper consideration" to the record and how the ALJ mischaracterized it and failed to consider the SSR 16-3p factors in her analysis. (ECF No. 15, PageID #: 555–56).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information

---

[2] In the interest of judicial economy, the Court will not address the merits of this argument as it is irrelevant to its holding. Claimant argues that the Commissioner is misinterpreting the holding in *Biestek v. Berryhill* and asserts an incorrect legal standard this Court must apply. Regardless of the Commissioner's interpretation of the legal standard, this Court will apply the substantial evidence standard outlined in numerous cases that have been discussed above. As the Commissioner's interpretation of the standard has no bearing on this Court's reasoning, it will not be discussed further.

provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors an ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, No. 3:18-cv-1639, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant testified she uses a restroom eight to ten times on a "bad" day and two to four times on a "good" day. (ECF No. 8, PageID #: 85–87). She stated each visit lasts at least thirty minutes and that she experienced two or three "bad" days a week. (ECF No. 8, PageID #: 85–87). Because of the frequency of these symptoms, Claimant stated she tries to stay home in case she

9

needs a restroom. (ECF No. 8, PageID #: 86). The record indicates that in May 2019, Claimant told a doctor she was experiencing diarrhea seven to eight times a day, as well as abdominal cramping, urgency, bloating, and gas. (ECF No. 8, PageID #: 326). She also alleged she has lost twelve pounds since her symptoms began. (ECF No. 8, PageID #: 326).

In her decision, the ALJ summarized these allegations:

> The claimant reported disability related to arthritis, degenerative disc disease, Crohn's/IBS, and ulcer hiatal hernia (3E/2). The claimant reported her past jobs ended due to changes in management; she is disabled due to the amount of time she spends in the restroom; she sleeps only 3-4 hours per night (Testimony). The claimant reported varying frequency of bowel movements, ranging from 2-4 daily to up to 8-12 per day (See 2F/3-4; 9F/5). She noted her bathroom visits vary up to hours at a time.

(ECF No. 8, PageID #: 63). However, the ALJ ultimately discredited the extent of Claimant's allegations for the following reasons:

> In this case, although the medical evidence documented the existence of impairments that could reasonably be expected to produce a certain degree of symptoms, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity or to preclude all work activity on a continuing and regular basis. Bearing this in mind, the undersigned finds that restricting the claimant to performing the range of work described above adequately addresses the location, duration, frequency, and intensity of the claimant's alleged symptoms as well as precipitating and aggravating factors. The claimant's testimony and allegations are not entirely consistent with the record as a whole.
>
> [. . .]
>
> After careful consideration, the undersigned finds that the claimant's allegations are not entirely consistent with the evidence of record. While the claimant reported frequent issues related to IBD and weight loss, the record does not support any significant weight loss. The claimant's weights include 206 pounds on May 3, 2019 (3F/29); 207 pounds on July 10, 2019 (3F/45); 203 pounds on January 8, 2020 (3F/11); and 201 pounds on February 25, 2020 (9F/15). All of these related BMI scores or equal to or greater than 30, consistent with obesity, and they do not reflect any significant

10

> gastrointestinal disease process impacting the claimant's ability to maintain weight consistently. Based on the frequency of diarrhea alleged by the claimant, one might expect to see some considerable variation in weight over the relevant period, but the record does not reflect such findings.
>
> The claimant reported diarrhea, but denied abdominal pain, rectal bleeding, constipation, nausea, and vomiting (3F/17; 6F/11). In May of 2019, she noted having the symptoms on and off over the past 5 years (3F/27); however, the record does not reflect this issue impacted her ability to attend and retain her past jobs. The claimant also reported that medication helped (Testimony). The claimant denied having any accidents or incontinence issues, specifying that she has been able to get to the bathroom timely. After reviewing the medical evidence of record available to them, including some of the aforementioned physical examination findings and imaging, the state agency medical consultants opined that the claimant is limited to light exertion, with occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing, kneeling, crouching, and crawling; occasionally stooping; and avoid all exposure to hazards, such as hazardous machinery and heights (2A/7-9, 3A/4-5). They considered all of the aforementioned severe impairments, and the record subsequent to their reviews, does not include evidence material to the claimant's functional limitations.
>
> In sum, the claimant's alleged physical functional limitations are not entirely consistent with the claimant's reported daily functioning, the examination findings of record, and the persuasive portions of the medical opinions. Nonetheless, the above evidence supports that the claimant has experienced the degree of limitation reflected in the residual functional capacity assessment above. While the record does not entirely support the extent of limitations the claimant has alleged, the record supports some degree of limitation from the claimant's impairments.

(ECF No. 8, PageID #: 63–64, 65).

The ALJ discussed Claimant's physical impairments and gastrointestinal symptoms in her review of the medical evidence. (*See* ECF No. 8, PageID #: 64). The ALJ reviewed EGD and colonoscopy results from May 2019 and made the following observations (sic):

> An EGD on May 23, 2019, showed diaphragmatic hernia, other disease of stomach and duodenum (3F/33-35). A colonoscopy of the same date showed multiple erosions in the terminal ileum, sigmoid

11

> colon, descending colon; tortuous colon; and otherwise unremarkable (3F/36-38). Biopsy should no diffuse inflammatory and architectural changes consistent with ulcerative colitis; however, the patchy inflammatory changes in the terminal ileum and colon were consistent with differential diagnoses of infection, medication-induced mucosal injury, and Crohn's disease (3F/40). Further testing showed a pattern "not consistent with IBD", which includes Crohn's disease or ulcerative colitis (3F/42). Imaging of the claimant's abdomen on June 18, 2019, showed no signs of small or large bowel inflammation; however, it showed a large hiatal hernia and cholelithiasis (6F/28-29; 7F/2-3). Despite these results, the claimant's doctor related her diarrhea to mild ileitis and colitis, and concluded that she still may have IBS-D despite diagnostic panels concluding otherwise (3F/46). Related exam findings in the record include positive bowel sounds in al quadrants; a soft, non-tender, and nondistended abdomen, without guarding, rigidity or rebound tenderness; no abdominal palpable masses; a normal gait; and no neurological focal deficits (3F/45; 6F/11-12).

(ECF No. 8, PageID #: 64–65). The ALJ also reviewed an October 2020 record and pointed out that Claimant did not report diarrhea. (ECF No. 8, PageID #: 64 (citing ECF No. 8, PageID #: 457)).[3]

In her credibility finding, the ALJ provided several reasons for discrediting the severity of Claimant's subject complaints. (*See* ECF No. 8, PageID #: 65). First, the ALJ noted that Claimant's allegation of significant weight loss, a symptom of "significant" gastrointestinal impairments, was not supported by the record. (ECF No. 8, PageID #: 65 (citing 328, 344, 503)).[4] The ALJ concluded that if Claimant experienced diarrhea as frequently as she alleged, one might expect "considerable variation in weight over the relevant period . . . ." (ECF No. 8, PageID #: 65). Since the record did not reflect this, the ALJ found it undermined Claimant's allegations. (*See* ECF No. 8, PageID

---

[3] Aside from the gastrointestinal records, the ALJ reviewed additional records related to Claimant's other impairments, but the Court will not discuss these records here since Claimant is challenging the ALJ's finding regarding her allegations of gastrointestinal symptoms.

[4] The Court notes that the ALJ erroneously cited Exhibit 3F, page 11. This is a page from a 2016 record that does not record Claimant's weight.

12

#: 65). Second, the ALJ noted that Claimant denied abdominal pain, rectal bleeding, constipation, nausea, and vomiting at multiple appointments. (ECF No. 8, PageID #: 65 (citing ECF No. 8, PageID #: 316, 369)). Next, the ALJ reasoned that Claimant experienced intermittent gastrointestinal problems for the past five years but that she had been able to maintain employment. (ECF No. 8, PageID #: 65). The ALJ also discussed that Claimant's use of mediation helped her condition. (ECF No. 8, PageID #: 65). Since Claimant had not reported "any accidents or incontinence issues" and that she "has been able to get to the bathroom timely," the ALJ found that her allegations of debilitating restroom breaks were not supported by the record. (*See* ECF No. 8, PageID #: 65). Finally, the ALJ noted that the state agency medical consultants found Claimant was capable of light work, an RFC the ALJ ultimately adopted. (ECF No. 8, PageID #: 65 (citing ECF No. 8, PageID #: 106–08, 114–15)). Thus, the Court finds that substantial evidence supports the ALJ's finding that Claimant's complaints were not entirely consistent with the record.

Claimant argues that the ALJ did not properly apply SSR 16-3p since she did not review certain factors such as daily activities. (*See* ECF No. 10, PageID #: 531; ECF No. 15, PageID #: 555–56)). However, the ALJ is not required to address every factor, so long as she reviews the relevant medical evidence. *See Cross*, 373 F. Supp. 2d at 733. The Court finds that the ALJ addressed several SSR 16-3p factors, including medication and functional limitations, as well as the relevant medical evidence. Additionally, the ALJ did discuss Claimant's daily activities, albeit briefly. (*See* ECF No. 8, PageID #: 63 ("The claimant reported varying frequency of bowel movements, ranging from 2-4 daily to up to 8-12 per day (See 2F/3-4; 9F/5). She noted her bathroom visits vary up to hours at a time.")).

13

Claimant further argues that the ALJ mischaracterized the record, only focusing on "benign" findings, and ignored the context of certain records (*See* ECF No. 10, PageID #: 529 (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 481, 488 (1951))). She then lists various records and her own testimony, arguing that "this evidence clearly shows that [she] was more severely limited than the ALJ described." (ECF No. 10, PageID #: 530–31). This argument fails for two reasons. First, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Second, the ALJ clearly reviewed these records as she cited from almost every exhibit Claimant cites in her rehashing of the evidence. (*See* ECF No. 8, PageID #: 64–65 (citing various pages from Exhibits 2F, 3F, 6F, 7F)). Moreover, the ALJ considered one of Claimant's main contentions—the frequency of her bowel movements—in the beginning of her RFC analysis. (*See* ECF No. 8, PageID #: 63 (Claimant alleges "She is disabled due to the amount of time she spends in the restroom . . . . The claimant reported varying frequency of bowel movements, ranging from 2-4 daily to up to 8-12 per day (See 2F/3-4; 9F/5)")). She also reviewed records of "clinically significant" diarrhea and Claimant's colon during the hearing and discussed bathroom access with the vocational expert. (*See* ECF No. 8, PageID #: 89, 91, 95–96). Thus, although the ALJ did not explicitly reference every allegation Claimant made about the frequency of her gastrointestinal symptoms, substantial evidence supports her credibility findings and demonstrates that she did not "cherry-pick" the record. *See also Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to consider all of the evidence in the record,

14

[s]he is not required to discuss each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016).

Claimant's argument that the ALJ reviewed evidence out of context is also without merit. One example Claimant specifically cites is that the ALJ mischaracterized Claimant's testimony that she had not had any accidents or incontinence by failing to also mention Claimant's testimony that she goes to great lengths to avoid them and often stays home. (*See* ECF No. 15, PageID #: 553–54). Regardless of whether the ALJ had referenced this additional testimony, it does not materially change the fact that Claimant has not had any accidents or incontinence, which is indeed relevant to the ALJ's analysis of Claimant's allegation of severe gastrointestinal symptoms. Claimant does not deny the truth or relevance of this testimony, and again, the ALJ is not required "to discuss every piece of evidence in the record to substantiate [her] decision." *See Conner*, 658 F. App'x at 254.[5] Accordingly, the Court finds that the ALJ did not cherry-pick or mischaracterize the record.

The ALJ's decision satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *See Cross,* 373 F. Supp. 2d at 732.

---

[5] Another example Claimant challenges as a mischaracterization of the record is the Commissioner's reference in its response to Claimant's diminishing number of bowel movements per day. (ECF No. 15, PageID #: 554–55). However, as the ALJ never referenced this or considered it in her credibility finding, the Court need not address it now.

**VI. Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Claimant benefits.

Dated: February 1, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE